IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| VITALIFE INC.<br><br>   Plaintiff<br><br>   vs.<br><br>COLOPLAST A/S; COLOPLAST CORP.;<br>JOHN DOE; CORPORATIONS X, Y, Z<br><br>   Defendants | CIVIL NO.  3:23-cv-01066 (JAG)<br><br>RE:<br><br>Law 75, Breach of Contract; Declaratory Judgment, Injunctive Relief, Tort, etc. |

## **SECOND AMENDED COMPLAINT**

TO THE HONORABLE COURT:

NOW COME Plaintiff Vitalife, Inc. ("**Plaintiff**" or "**Vitalife**") through its undersigned counsel and respectfully states, alleges, and prays as follows:

### **I. INTRODUCTION:**

1.      The present case deals with the illegal termination of the distribution rights of Vitalife as to certain urological products manufactured by its supplier, Coloplast Corp., by unjustifiably terminating the relationship and withdrawing, in bad faith, from the market in Puerto Rico, in violation of Law # 75 enacted on June 24, 1964, as amended (10 L.P.R.A. §278 et seq.) and the decision in Borg Warner International Corp. v. Quasar Co., 138 D.P.R. 60 (1995), and in violation of the exclusive distribution agreement executed by the parties in contravention of Arts. 1054-1060 and 1077 of the Civil Code of 1930 (31 L.P.R. §§ 3018-3024), as amended, and Arts. 1073, 1080, 1082 and 1156-1169 of the Civil Code of 2020 (31 L.P.R.A. §§ 9008, 9015, 9017 and 9301-9333). Relief is requested consisting of a preliminary and permanent injunction and damages authorized by Law 75, by Rules 56 and 57 of Civil Procedure, by the Civil Code of 2020, and by

1

the Puerto Rico Injunction Act (32 L.P.R.A. §§ 3521-3533). Furthermore, relief is requested consisting of a Declaratory Judgment under Rule 59 of Civil Procedure, and of a temporary and permanent injunction, declaring the voidness of several contractual provisions which Coloplast alleges apply to the contractual relationship between the parties, but which are contrary to the laws of Puerto Rico. Lastly, the tortious actions of the defendant have caused damages to Vitalife in violation of Art. 1802 of the Civil Code of 1930 (31 L.P.R.A. § 5141) and Arts.1536 and 1538-1540 of the Civil Code of 2020 (31 L.P.R.A. §§ 10801 & 10803-10805).

## II. PARTIES:

2. Plaintiff Vitalife is a corporation organized under the laws of the Commonwealth of Puerto Rico, with principal offices located at 1590 Cavalieri Street, San Juan, PR 00927-6129; Tel. (787) 758-0930.

3. Codefendant Coloplast A/S (hereinafter "**Coloplast A/S**"), a foreign corporation organized under the laws of Denmark, with principal offices located at Holtedam 1-3, DK-3050 Humlebaek, Denmark. The current President of Coloplast A/S is Mr. Kristian Villumsen.

4. Defendant Coloplast Corp. (hereinafter "**Coloplast**") is a foreign corporation organized under the laws of the State of Delaware, with main offices located at 1601 West River Road North, Minneapolis, MN 55411; Tel. 1-800-533-0464. The registered agent of Coloplast is Corporation Service Company, with offices in 2345 Rice St., Suite 230, Roseville, MN 55113-5603. The current President of Coloplast is Mr. Manu Varma. Coloplast was originally registered and authorized to do business in the Commonwealth of Puerto Rico as a foreign corporation. However, said authorization was revoked by the Department of State of the Commonwealth of Puerto Rico on December 21, 2018.

5. Codefendants "John Doe" and Corporations X, Y, Z" are fictitious names representing any other person and/or legal entity liable to the plaintiffs and whose name are currently unknown.

### III. SUBJECT MATTER JURISDICTION, VENUE AND CHOICE OF LAW

6. This Honorable Court has diversity jurisdiction over this action under 28 U.S.C. § 1332, as the underlying dispute is between citizens of different States and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7. Venue is proper in this U.S. District Court of Puerto Rico as per 28 U.S.C. § 1391(a)(2), since a substantial part of the events or omissions giving rise to the claims contained herein occurred in Puerto Rico.  Venue is proper in this U.S. District Court of Puerto Rico as per Article 3B of Law 75 (P.R. Laws Ann. tit. 10, § 278b-2) which expressly provides that "Any stipulation that obligates a dealer to adjust, arbitrate or litigate any controversy that comes up regarding his dealer's contract outside of Puerto Rico, or under foreign law or rule of law, shall be likewise considered as violating the public policy set forth by this chapter and is therefore null and void."

8. The choice of law applicable to the instant case is the law of the Commonwealth of Puerto Rico since a federal court deriving jurisdiction from diversity must apply the law and the choice of law rules of the state in which it sits, in this case Puerto Rico, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941), because Puerto Rico is the jurisdiction with the dominant and/or most significant contacts with respect to the issues in dispute in this case, and because Article 3B of Law 75 (P.R. Laws Ann. tit. 10, § 278b-2) cited above mandates the application of Puerto Rico law.

## IV. IN PERSONAM JURISDICTION.

9. All the averments stated in paragraphs 1-8 and 16-58 herein are hereby incorporated by reference.

10. This Honorable Court has specific personal jurisdiction over Coloplast by reason of its minimum contacts with Puerto Rico, which satisfy Puerto Rico's Long-Arm Statute (Rule 3.1 of the Puerto Rico Rules of Procedure of 2009, 32 L.P.R.A. Ap.V, R. 3.1) and the applicable case law. Coloplast's contacts with Puerto Rico includes the negotiation, execution and performance of a contractual distribution relationship with Vitalife for the purposeful, knowing and directed sale and distribution of Coloplast's Products specifically to the Puerto Rico market through Vitalife. Those contacts are specifically related to the underlying distribution relationship between the parties that is the object of this case.

11. Specifically, Vitalife's exclusive distribution relationship with Coloplast is an indefinitely termed exclusive distribution relationship covered by PR Law No. 75, which cannot be impaired, terminated or denied renewal except for just cause. As part of this long-term relationship, Coloplast purposefully promoted, marketed, sold, arranged the delivery, and generally oversaw the distribution of its Products to Vitalife, a local Puerto Rico business, for the express purpose of having these Products marketed and resold to customers and end users located in Puerto Rico.

12. Coloplast is the corporation that entered into a contract with Vitalife for the marketing and exclusive distribution of certain urological medical products in the Puerto Rican market, when it assumed the obligations of Mentor Corporation ("Mentor") as supplier contained in an Exclusive Distribution Agreement dated March 17, 2004, previously executed between Vitalife and Mentor. Under these agreements, Coloplast gave Plaintiff Vitalife the right to

4

exclusively distribute its urological medical products in the Puerto Rican market. The intention of the parties when they reached said agreements was for Vitalife to continue with the exclusive distribution of the Products in Puerto Rico that began in 2004. Said agreements were partly negotiated in Puerto Rico. Said distribution agreements necessarily require that their terms and conditions be substantially complied with in Puerto Rico. Said agreement, pursuant to Law # 75, created a long-term contractual relationship, under which Coloplast products were, and shall be, voluntarily and intentionally introduced and marketed in the Puerto Rican market through Vitalife for an indefinite period. The termination of the rights of Vitalife was done in clear violation of Law 75. The claims in the case at bar stem from said contractual relationship.

13.    This exclusive distribution relationship was negotiated and agreed to, in part, in Puerto Rico. Substantial performance of this distribution relationship took place in Puerto Rico. The inventory of the Products purchased by Vitalife was acquired with funds originating in Puerto Rico; the inventory would then be shipped to Puerto Rico; local Puerto Rico personal property and income taxes were assessed and paid in Puerto Rico for the purchased inventory; the inventory would then be marketed and sold to Puerto Rico customers and used by Puerto Rico doctors and medical facilities for mostly Puerto Rico patients and end-users; in many instances, payment for the Products would be paid by local insurance companies; funds produced by the sale of the Products to customers would be placed in Puerto Rico banking facilities; risk of loss and warranty service for the Products was borne by Vitalife, a Puerto Rico entity.

14.    This Honorable Court also has specific personal jurisdiction over Coloplast A/C by reason of its minimum contacts with Puerto Rico, which satisfy Puerto Rico's Long-Arm Statute (Rule 3.1 of the Puerto Rico Rules of Procedure of 2009, 32 L.P.R.A. Ap. V, R. 3.1) and the applicable case law. As alleged in this Complaint, Coloplast A/C caused and/or motivated the

5

termination of the distribution rights of Vitalife protected by Law 75 and which are the subject of the present Complaint. Coloplast A/C was the one that made the decision to terminate the distribution rights of Vitalife protected by Law 75 and which are the subject of the present Complaint. This is evidenced by letters from Coloplast A/C dated October 5, 2021, but notified on October 6, 2021, notifying the termination of the distribution rights of plaintiff Vitalife, which means that the decision to terminate Vitalife was made by Coloplast A/C. Coloplast A/V made this decision with full knowledge of the fact that that would cause damages to Vitalife, an entity located in Puerto Rico; therefore, Coloplast A/C has intentionally tortiously interfered with the exclusive distribution rights of Vitalife.

15. These contacts with Puerto Rico demonstrate Coloplast's and Coloplast A/C's purposeful availment of the laws of Puerto Rico and renders it reasonable that they be hauled into a Puerto Rico federal district court in order to adjudicate the instant legal action.

## V. FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS AND CAUSES OF ACTION.

16. All of the averments stated in paragraphs 1-15 are hereby incorporated by reference.

17. Vitalife is a Puerto Rican company dedicated to selling and distributing medical products in Puerto Rico.

18. Coloplast manufactures the following groups or families of urological medical products:

For Men:

- Titan Touch Inflatable Penile Prothesis and its parts, components and disposables
- Titan Inflatable Penile Prothesis and its parts, components and disposables
- Genesis Malleable Penile Implant and its parts, components and disposables
- Virtue Male Sling
- Torosa Testicular Implant and its parts, components and disposables

<u>For Women</u>:

- Pelvic Floor Synthetic Mesh: Restorelle (M, L, XL), Restorelle Y (shaped and contour)
- Meridian Vaginal Positioning System
- Digitex Suture Delivery Device and Sutures
- Female Incontinence Slings: Altis, Aris, Supris

(hereinafter "**the Products**").

19. The Products and/or their predecessors were previously manufactured by Mentor Corporation.

20. Mentor gave Vitalife the exclusive distribution of the Products and/or their predecessors in the markets of Puerto Rico and the Virgin Islands pursuant to an Exclusive Distribution Agreement dated March 17, 2004 ("**the 2004 Agreement**"). A copy of the said 2004 Agreement is attached as <u>**Exhibit 1**</u>. Pursuant to Schedule 18 of the 2004 Agreement, the same had a term of three (3) years, with two automatic renewals of once (1) year each, for a total of five years. This means that this written 2004 Agreement expired on March 17, 2009.

21. Coloplast acquired the Mentor Urology Division in 2006, presumably in an asset purchase transaction, by which it acquired ownership of the Products and their predecessors, of their brands and commercial names, and of their manufacturing procedures and distribution chains. A copy is attached of a notice by Coloplast and Mentor Form SEC 8-K announcing the purchase as <u>**Exbibits 2 and 3**</u>. Once it acquired Mentor's Urology Division, Coloplast agreed to assume, and in fact assumed, the basic exclusivity and commercial terms and conditions and the sale obligations of Mentor to Vitalife under the 2004 Agreement. Vitalife also verbally agreed to continue complying with the basic exclusivity and commercial terms and conditions of the then existing 2004 Agreement. However, Coloplast Corp. and Vitalife never executed nor agreed to the terms of a written distribution agreement. Instead, Coloplast Corp. verbally agreed to assume

7

Mentor's obligations under the 2004 Agreement and to continue with Vitalife exclusive distribution of the Products. As a matter of law, Coloplast's complete substitution of Mentor as Vitalife's supplier of the Products constituted a form of complete extinctive novation that created a new contract as per Article 1159 of the P.R. Civil Code of 1930 (31 L.P.R.A. § 3243) and Articles 1184 and 1185 of the P.R. Civil Code of 2020 (31 L.P.R.A. §§ 9423 & 9424) and *Teachers Annuity v. La Sociedad de Ganaciales*, 115 D.P.R. 277 (1984); *Cámara Insular Comerciantes Mayoristas v. Lavandero*, 83 D.P.R. 596 (1961). Therefore, **legally**, Vitalife became the exclusive distributor of Coloplast for the Products in Puerto Rico and the Virgin Islands as per a new verbal exclusive distribution agreement that adopted and imported the basic exclusivity and commercial terms and conditions of the 2004 Agreement. As a matter of fact, Coloplast and Vitalife never discussed, and hence never agreed nor consented, to be subjected to the forum selection clause and to the choice of law clause contained in the 2004 Agreement. After the 2004 Agreement expired in March of 2009, the parties never agreed to any written or verbal arrangements containing a forum selection clause or a choice-of-law clause.

22. Vitalife complied with all the commercial terms and conditions of its exclusive distribution relationship with Coloplast. Among other things, through the marketing efforts of Vitalife, the plaintiff opened the Puerto Rican market to the Products and achieved substantial sales of the same. Even though Product sales were seriously affected by the disasters and consequences resulting from Hurricanes Irma and María in 2017 and by the COVID-19 pandemic in 2020, as of 2021 Vitalife had been able to exceed the sales of previous years and was on its way to doubling the sales achieved in 2020.

23. In spite of the fact that Vitalife complied with all its obligations, created a lucrative market for the Products in Puerto Rico, and that Vitalife was in the process of doubling the sales

8

of the Products made in 2021, Coloplast decided to use the negotiation of certain written amendments to their contractual relationship to demand that Vitalife agree to new prices for the Products that were clearly unreasonable, unacceptable, and outside of the margins of the market, as a pretext to unjustifiably terminate the exclusive distribution rights of Vitalife over the Products and/or withdrawing, in bad faith and without any valid just cause, from the Puerto Rico market. This is how on October 6, 2021, Vitalife received some letters and a notice from Coloplast A/C, dated October 5, 2021, where the defendants notified Vitalife that they were terminating the exclusive distribution rights of Vitalife over the Products and that Coloplast was supposedly withdrawing allegedly because Vitalife's purchases of Products were "at a level of revenue far below the cost of sales support". The email, letter and termination letter sent by the defendants are attached as **Exhibit 4**. However, the alleged reason given for said draconian act was false and a mere pretext that does not comply with what is required under *Borg Warner lnternational Corp. v. Quasar Co.*, 138 D.P.R. 60 (1995). Therefore, Coloplast's withdrawal from the market was done in bad faith and without any just cause according to the conditions of the Puerto Rico market.

24. Following the termination letter, Vitalife tried to negotiate a fair and reasonable solution to the impasse in the negotiations as to the amendments to the 2004 Agreement, agreeing to almost all of the terms and conditions offered by the defendants, and offering to agree to new prices for the Products which were much higher than the existing prices being paid by Vitalife. A copy is attached of letters sent on November 3, 2021, November 23, 2021, and December 15, 2021, by the legal representative of Vitalife, as **Exhibits 5, 6 and 7**. However, Coloplast refused to negotiate fair and reasonable terms to reinstate Vitalife's distribution rights.

25. At some point in time relevant to this case, Coloplast held communications with Miami-based medical distributor CDI Med LLC and/or CDI Med Group LLC ("CDI") regarding

Coloplast's desire to appoint CDI as its authorized distributor of the Products for Puerto Rico (in substitution of Vitalife) and for other markets. Coloplast indicated to CDI its desire to appoint a large-sized stateside distributor (like CDI) that could cover several regions or markets, including Puerto Rico. Upon information and belief, Coloplast had similar communications with other stateside distributors. Coloplast ceased its communications with CDI only after Vitalife learned of those communications and held meetings with CDI personnel about them.

26. At all times relevant to this Complaint, Vitalife has complied with all legal requirements to be considered a "distributor" protected by Law 75, since: (i) Vitalife was able to create and grow a market for the Products of Coloplast in Puerto Rico; (ii) Vitalife made the efforts to sell said Products from its main offices located in San Juan, Puerto Rico, from where it sold said Products, among others, to doctors, hospitals, medical- hospital facilities, public and private medical plans, and individual patients; (iii) Vitalife regularly purchased the Products at wholesale distributor prices, acquiring ownership over said inventory; (iv) Vitalife actively promoted, marketed and sold the Products of Coloplast throughout Puerto Rico, closing sales with clients in Puerto Rico; (v) Vitalife took the necessary technical training and education to be able to sell the Products of Coloplast in Puerto Rico, and carried out all of the marketing, sale, service and collection activities of a distributor; (vi) Vitalife determined, at its entire discretion, the resale price of the Products that it sold and collects all amounts for Products sold; (vii) Vitalife is the entity that agreed to all terms of sale with the clients and buyers of the Products to whom it sold them in Puerto Rico; (viii) Vitalife was the one responsible for delivering the Products sold to clients and buyers; (ix) Vitalife was the entity with the authority and capacity to grant credit terms to the clients and buyers of the Products to whom it sold them in Puerto Rico; (x) Vitalife made independent marketing and sales efforts, including presentations, lunches, seminars, etc.; (xi) Once

Vitalife acquired the inventory of the Products purchased, it assumed the risk of losing it ("risk of loss") and payment of shipping costs and taxes, and it was also liable to the clients as to the warranty, quality and adequacy of the Products; (xii) Vitalife stored the acquired Product inventory in its warehouse located in its main offices; (xiii) Vitalife assisted and still assists clients and buyers of the Products (in general doctors and hospitals, and medical plans) as to the correct manner of using them; and (xiv) Vitalife did not receive nor does it receive a commission for selling the Coloplast Products; rather, its earnings are based on the difference between the Product purchase price and the resale price.

27. Vitalife filed a first lawsuit in relation to these same facts against the same defendants in the Puerto Rico Court of First Instance, San Juan Part, on December 4, 2021, <u>Vitalife v. Coloplast A/S, et al</u>., Civil No. SJ2021CV08004 (904). That first lawsuit ended with a Judgment dismissing it without prejudice notified on April 5, 2022. That first lawsuit tolled the statutes of limitations applicable to the different causes of action alleged herein. The statutes of limitation began running again on April 5, 2022.

28. This second lawsuit was originally filed with the Puerto Rico Court of First Instance, San Juan Part, on December 31, 2022, <u>Vitalife v. Coloplast A/S, et al</u>., Civil No. SJ2023CV11348 (907). The case was then removed to this U.S. District Court on February 13, 2023.

## VI. CLAIMS AND CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF DECLARING THE FORUM SELECTION CLAUSE AND THE CHOICE OF LAW CLAUSE IN THE 2004 AGREEMENT NULL, VOID AND UNENFORCEABLE AND ENJOINING THEIR APPLICATION AGAINST VITALIFE.

29. All of the averments stated in paragraphs 1-28 are hereby incorporated by reference.

30. Vitalife is a "distributor" protected by Law #75.

31. Coloplast's so-called "withdrawal" of the Puerto Rico market in reality is an illegal and unlawful termination without just cause Vitalife's exclusive distribution rights over the Products in violation of Law #75.

32. Coloplast's alleged "withdrawal" failed to comply with both the notice requirements and the exhaustion of good faith negotiations requirement set by *Borg Warner International Corp. v. Quasar Co*., 138 D.P.R. 60 (1995) and *Medina Medina v. Country Foods, Ltd*., 122 D.P.R. 172 (1988). In addition, Coloplast's alleged "withdrawal" from the market while it engaged in communication with CDI (and with other potential substitute distributors) directed at appointing a new authorized distributor for Puerto Rico, in substitution of Vitalife, proves that the alleged "withdrawal" was a ruse and a sham, and that Coloplast actually unlawfully and unjustifiably terminated Vitalife in violation of Law 75 and with the intent to take advantage of the goodwill of the product line generated by Vitalife.

33. It is requested that Vitalife be compensated under Law #75 in an amount of at least $1,000,000.00 for all compensable economic damages caused by the illegal termination of the exclusive distribution of the Products.

34. In order to prevent Vitalife from continuing to suffer irreparable harm, the plaintiff requests a preliminary injunction under Article 3-A of Law #75 (10 L.P.R.A. § 278b-1), ordering the defendants to resume supplying Vitalife with the Products under the same terms and conditions previously agreed upon, and prohibiting defendants from selling the Products in Puerto Rico directly or via third parties.

35. A permanent injunction is also requested under Rule 57 of Civil Procedure, Arts. 1051 and 1077 of the Civil Code of 1930 (31 L.P.R.A. §§ 3015 & 3052), Arts. 1073, 1080, 1082 and 1156-1169 of the Civil Code of 2020 (31 L.P.R.A. §§ 9008, 9015, 9017 and 9301-9333), and the Puerto Rico Injunction Act (32 L.P.R.A. §§ 3521-3533), ordering the defendants to supply Vitalife with the Products under the same terms and conditions previously agreed upon, and prohibiting defendants from selling the Products in Puerto Rico directly or via a third party that is not Vitalife, unless there is just cause first as defined by Law 75 and its case law.

36. Vitalife further requests recovery of all the costs and attorney's fees permitted under Section 7 of Law 75 (10 L.P.R.A. § 278e).

## SECOND CAUSE OF ACTION

### DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF DECLARING THE FORUM SELECTION CLAUSE AND THE CHOICE OF LAW CLAUSE IN THE 2004 AGREEMENT NULL, VOID AND UNENFORCEABLE AND ENJOINING THEIR APPLICATION AGAINST VITALIFE.

37. All of the averments stated in paragraphs 1-36 are hereby incorporated by reference.

38. Vitalife submits that, **legally**, the forum selection clause and choice of law clause in Paragraphs 22.3 and 22.4 of the 2004 Agreement are not part of its new verbal exclusive distribution relationship with Coloplast. Hence, Vitalife is not legally bound to the forum selection clause and choice of law clause in Paragraphs 22.3 and 22.4 of the 2004 Agreement.

39. However, in the event that any Court with jurisdiction finds that Vitalife is still legally bound to the forum selection clause and choice of law clause in Paragraphs 22.3 and 22.4 of the 2004 Agreement, then those contractual clauses must be declared null, void and unenforceable by this Honorable Court.

40. The nullity of the Choice of Law Clause and Forum Selection Clause in the 2004 Agreement is a justiciable controversy which is ripe for adjudication via a declaratory judgment.

41. Article 3B of Law #75 (10 L.P.R.A. § 278b-2), which provides as follows:

"The distribution agreements to which the present chapter makes reference shall be interpreted in accordance with, and shall be governed by, the laws of the Commonwealth of Puerto Rico, and any stipulation to the contrary shall be null and void.

It shall also be considered in contravention of the public policy informing this chapter and, consequently, null and void, any stipulation compelling a distributor to resolve, arbitrate or litigate outside of Puerto Rico, or under foreign laws or rules, any controversy arising in relation to their distribution agreement."

42. Article 4 of Law #75 (10 L.P.R.A. § 278c) prohibits waiving the rights provided by Law 75 as follows:

"The provisions of the present chapter are public order provisions; therefore, the rights determined by said provisions cannot be waived. Since this chapter is a remedial chapter, it must be interpreted liberally in order to give said rights the utmost protection; in the adjudication of claims arising under it, courts of law shall recognize the above-referenced rights in favor of whoever is actually in charge of the distribution activities, regardless of the corporate or contractual structures or mechanisms created or imposed by the principal or assignor to conceal the real nature of the established relationship."

43. The forum section clause in the 2004 Agreement is also null, void and unenforceable because it is contrary to Puerto Rico Public Policy. In *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15-18 (1972) the Supreme Court determined that a forum selection clause may be deemed unenforceable if its enforcement contravenes "a strong public policy of the forum in which suit is brought, whether declared by statute or judicial." Article 2 of Law 75 (P.R. Laws Ann. tit.

10, § 278c) expressly provides that "The provisions of this chapter are of a public order and therefore the rights determined by such provisions cannot be waived."  In turn, Article 3B of Law 75 (P.R. Laws Ann. tit. 10, § 278b-2) expressly provides that "Any stipulation that obligates a dealer to adjust, arbitrate or litigate any controversy that comes up regarding his dealer's contract outside of Puerto Rico . . . shall be likewise considered as violating the public policy set forth by this chapter and is therefore null and void."  *See Rafael Rodriguez Barril, Inc. v. Conbraco Indus.*, 619 F.3d 90, 94 (1st Cir. 2010) (noting that Law 75 embodies a "strong public policy" of Puerto Rico that forbids forum selection clauses in distribution contracts); *Caguas Lumber Yard Inc. v. Ace Hardware Corp.*, 827 F. Supp. 2d 76, 82-84 (D.P.R. 2011) (rejecting application of forum selection clause under Art. 3B of Law 75).

44.     The choice of law clause in the 2004 Agreement is null, void and unenforceable because it is contrary to Puerto Rico public policy and to Article 3B of Law 75 (P.R. Laws Ann. tit. 10, § 278b-2).  Article 3B of Law 75 (P.R. Laws Ann. tit. 10, § 278b-2) expressly provides that "Any stipulation that obligates a dealer to adjust, arbitrate or litigate any controversy that comes up regarding his dealer's contract . . . under foreign law or rule of law, shall be likewise considered as violating the public policy set forth by this chapter and is therefore null and void." (Emphasis supplied). *A.M. Capen's Co. v. American Trading & Prod. Corp.*, 1994 U.S. Dist. LEXIS 13158 at *8 (D.P.R. 1994); *Arrogar Distribs. v. KIS Corp.*, 151 F.R.D. 221, 277 (D.P.R. 1993); *Pan Am Computer Corp. v. Data General Corp.*, 467 F. Supp. 969, 969-70 (D.P.R. 1979).  The choice of law clause in the 2004 Agreement is also null, void and unenforceable under the recent application by the U.S. Supreme Court in *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, __ US__, 144 S. Ct. 637 (2024) of the *Bremen v. Zapata* standard to choice-of-law clauses.

45. In view of the above, it is ripe and legally proper that this Honorable Court enter a declaratory judgment as per Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201-2202 declaring that the Choice of Law clause and the Forum Selection Clause in the 2004 Agreement are null, void and unenforceable as it applies to any litigation between parties related to their distribution relationship governed by Law 75. In addition, the Honorable Court must enter the corresponding injunctive relief enjoining the enforcement or application of the Choice of Law clause and the Forum Selection Clause in the 2004 Agreement in contravention of the requested declaratory judgment.

## THIRD CAUSE OF ACTION

### FRAUD, DOLUS, AND BAID FAITH PERFORMANCE OF THE AGREMENT BETEEEN THE PARTIES.

46. All of the averments stated in paragraphs 1-45 are hereby incorporated by reference.

47. Both Article 89 of the Commercial Code (10 L.P.R.A. § 1309) and Article 1210 of the Civil Code of 1930 (31 L.P.R.A. § 3375), and Article 1062 of the Civil Code of 2020 (31 L.P.R.A. § 8983), provide that all agreements (containing object and cause) are perfected by mere consent, and are subsequently binding on the contracting parties not only as to compliance with what has been specifically agreed to, but also as to all consequences which, according to their nature, are in accordance with good faith, custom and the law.

48. Particularly, good faith, "[i]s a source which generates 'special behavioral duties enforceable in each case, in accordance with the nature of the legal relationship and with the objective sought by the parties through the same'." *Oriental Fin. Servs. v. José Juan Nieves*, 172 D.P.R. 462, 471-472 (2007).

49. 38. Pursuant to Article 89 of the Commercial Code (10 L.P.R.A. § 1309), Article 1210 of the Civil Code of 1930 (31 L.P.R.A. § 3375) and Article 1062 of the Civil Code

of 2020 (31 L.P.R.A. § 8983), the defendants had the obligation not to infringe the exclusive distribution rights of Vitalife, unless there was just cause.

50. The unjustified termination by the defendants of the exclusive distribution rights of Vitalife, and Coloplast's bad faith withdrawal from the market, are acts in bad faith in performance of contractual obligations, which also constitutes breach of contract and/or fraudulent and/or dolus, and/or negligent performance of the contractual verbal exclusive distribution agreement in violation of Articles 1054-1060 of the Civil Code of 1930 and of Articles 1073, 1080, 1082 and 1156-1169 of the Civil Code of 2020 (31 L.P.R.A. §§ 9008, 9015, 9017 and 9301-9333). Therefore, Vitalife has an implied right to rescind the contractual verbal exclusive distribution agreement existing between the parties, and to demand full indemnification for all damages, including punitive damages as allowed under the P.R. Civil Code of 2020.

51. It is requested that Vitalife be compensated for breach of contract and/or fraudulent and/or dolus and/or bad faith performance of the contractual verbal exclusive distribution agreement existing between the parties in an amount no less than $1,000,000.00 for all damages suffered and/or caused by said breach, including indemnification for any unforeseeable suffered damage, plus another amount no less than $1,000,000.00 in allowed punitive damages.

52. In order to prevent Vitalife from continuing to suffer irreparable harm, it is requesting a preliminary injunction and a permanent injunction under Rules 56 and 57 of Civil Procedure, Arts. 1051 and 1077 of the Civil Code of PR (31 L.P.R.A. §§ 3015 & 3052), Arts. 1073, 1080, 1082 and 1156-1169 of the Civil Code of 2020 (31 L.P.R.A. §§ 9008, 9015, 9017 and 9301-9333), and the Puerto Rico Injunction Act (32 L.P.R.A. §§ 3521-3533), ordering the defendants to resume supplying Vitalife with the Products under the same terms and conditions previously agreed upon, and prohibiting defendants from selling the Products in Puerto Rico

directly or via a third party that is not Vitalife, unless there is just cause first as defined by Law 75 and its case law.

## FOURTH CAUSE OF ACTION

**TORTIOUS INTERFERENCE UNDER ART. 1802 OF THE CIVIL CODE OF 1930 AND ARTS. 1536 AND 1538-1540 OF THE CIVIL CODE OF 2020.**

53. All of the averments stated in paragraphs 1-52 are hereby incorporated by reference.

54. Codefendant Coloplast A/C, intentionally and with full knowledge of the exclusive distribution contractual relationship between Coloplast and Vitalife, illegally and intentionally interfered with said relationship by causing the termination of the distribution relationship between Coloplast and Vitalife, in order to illegally free Coloplast from its legal and contractual obligations towards Vitalife, and to be able to assign those distribution rights to itself, to Coloplast and/or to a third party. This constitutes tortious interference under Article 1802 of the Civil Code.

55. The actions constituting tortious interference carried out by Coloplast A/C have caused and continue to cause damages to Vitalife in an amount of at least $1,000,000.00.

## FIFTH CAUSE OF ACTION

**TORT DAMAGES UNDER ART. 1802 OF THE CIVIL CODE OF 1930 AND ARTS. 1536 AND 1538-1540 OF THE CIVIL CODE OF 2020.**

56. All of the averments stated in paragraphs 1-55 are hereby incorporated by reference.

57. The Defendants have carried out negligent and/or intentional actions for the purpose of depriving Vitalife of its exclusive distribution of the Products in Puerto Rico, which have caused damages to Vitalife. They constitute tortious acts under Article 1802 of the P.R. Civil Code of 1930, and Articles 1538-1540 of the P.R. Civil Code of 2020.

58. The negligent and/or intentional acts of the defendants to deprive Vitalife of its distribution rights have caused, and continue to cause, damages to Vitalife in an amount of at least $1,000,000.00.

**WHEREFORE**, it is respectfully requested that this Honorable Court **ENTER JUDGMENT** finding each of the Defendants herein liable under the causes of actions set forth herein, **ADJUDICATING** that Coloplast's termination of Vitalife's distribution rights and its so called withdrawing in bad faith from the market were acts in violation of Law #75, in bad faith or fraudulent performance, a tortious act, and tortious interference, and **ORDERING** the defendants to pay the amounts claimed herein, along with the costs and attorney's fees allowed by law, including all attorney's fees and costs incurred in this legal action and that may be assessable and recoverable as provided in Section 7 of Law 75 (10 L.P.R.A. § 278e).

**IT IS FURTHER** respectfully requested that this Honorable Court **ENTER A DECLARATORY JUDGMENT** declaring that the Forum Selection Clause and the Choice of Law Clause in the 2004 Agreement are null and void and contrary to Law 75 and **ENTER THE CORRESPONDING INNUNCTIVE RELIEF** enjoining the enforcement or application of the ITCS Choice of Law and Forum Clause in contravention of the requested declaratory judgment.

It is also requested that the Honorable Court **ENTER THE CORRESPONDING PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF** reestablishing the distribution relationship and prohibiting the defendants from selling the Products in Puerto Rico directly or via a third party that is not Vitalife, unless there is just cause first as defined by Law 75 and its case law, and that it ORDER the defendants to reimburse Vitalife for all expenses, costs and attorney's fees incurred by the plaintiff in the case at bar.

**PLAINTIFF DEMANDS A TRIAL BY A JURY**.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, on May 18, 2024.

                Law Offices of Luis A. Melendez Albizu & Assoc., PSC
                (Counsels for Plaintiff
                Cobian Plaza, Suite 121
                #1607 Ponce de Leon Ave.,
                Río Piedras, PR  00909
                TEL. (787) 313-0283
                E-Mail: lma@melendezalbizulaw.com

                *s/Luis A. Meléndez-Albizu*
                LUIS A. MELENDEZ-ALBIZU
                USDC NO. 205703