IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

VITALIFE INC.,

    Plaintiff,

    v.                                        CIVIL NO.: 23-1066 (JAG)

COLOPLAST A/S, et al.,

    Defendants.

## ORDER

Pending before the Court are Vitalife Inc.'s ("Plaintiff") and Coloplast A/S and Coloplast Corp.'s ("Defendants") motions requesting entry of a discovery confidentiality order. ECF Nos. 100, 106. On December 5, 2024, Defendants filed a motion requesting entry of a discovery confidentiality order. ECF No. 100. On December 9, 2024, Plaintiff filed a cross motion requesting entry of a discovery confidentiality order and motion in opposition to Defendants' motion. ECF No. 106. Both parties attached a proposed protective order to their respective motions. ECF Nos. 100-1; 106-7. The aforementioned motions (ECF Nos. 100, 106) were referred to the undersigned. ECF No. 120. For the following reasons, both Plaintiff's and Defendants' motions requesting entry of a protective order are GRANTED IN PART and DENIED IN PART.

According to the Joint Initial Scheduling Memorandum, Plaintiff and Defendants were to either reach an agreement as to the text of a stipulated protective order by December 3, 2024, or file a joint motion by December 6, 2024, submitting their respective proposals for a protective order to the Court.[1] ECF No. 99. The parties were not able to reach an agreement as to the two-tiered

---

[1] Plaintiff takes issue with the fact that Defendant filed its own motion for a protective order on December 5, 2024, as opposed to waiting and filing a joint motion on December 6, 2024. ECF No. 106 at 3. Plaintiff argues that Defendants "openly and egregiously violated the parties' agreement contained in….the *Joint Initial Scheduling Memorandum*" and "[t]hat, by itself, should be a sufficient basis for denying [Defendants'] motion." *Id*. As a result, Plaintiff filed a "motion for term stipulated in the joint initial scheduling memorandum in order to oppose [Defendants'] motion and in order to

designation of "Confidential" and "Highly Confidential." Plaintiff disagrees with Defendants' proposed protective order whereby documents designated as "Confidential" may be shared with the Parties and their representatives while those designated as "Highly Confidential" may only be shared with in house counsel and counsel of record. No. 106-7 at 6-7. In other words, Plaintiff insists that "the Parties" should be able to view documents marked "Highly Confidential." *Id*. To support their objection, Plaintiff argues that Defendants' proposed disclosure of information marked "Highly Confidential" to in house counsel represents an undue advantage for Defendants because Plaintiff does not have in house counsel. *Id*. at 6-9. Defendants argue that Plaintiff's objections are "inapposite," as the concerns are easily addressed by the provisions of the Confidentiality Order enjoining Defendants from sharing confidential information with its employees or representatives, as well as by the ethical rules governing the practice of law. ECF No. 100 at 5-6. After reviewing the parties' motions and proposed protective orders, the Court adopts Defendants' proposed protective order (ECF No. 100-1) subject to the following changes.

First, the Court addresses the disagreement between the parties regarding who can view protected material designated as "Confidential" and "Highly Confidential." In Plaintiff's proposed protective order, there is no difference between the parties who can view protected material designated as "Confidential" and "Highly Confidential." ECF No. 106-7 at 5-7. If the Court takes Plaintiff's approach, nothing would be accomplished by having a two-tiered system. However, the Court still determines whether Defendants' in house counsel should be permitted access to confidential material, weighing the risk of "inadvertent or accidental disclosure" against the burden

---

present [Plaintiff's] position regarding the confidentiality protective order to be issued by the Court." ECF No. 101. In said motion, Plaintiff requests that the Court take judicial notice of Defendants' failure to comply with the agreement between the parties, honor that agreement, and grant Plaintiff until December 6, 2024, to present its proposed protective order and oppose Defendants' proposed protective order. *Id*. However, on December 6, 2024, Defendants file a response to said motion, explaining its reasons for filing its protective order separately on December 5, 2024. ECF No. 102. As a result, Plaintiff filed an informative motion requesting a brief extension until December 9, 2024, to file its protective order. ECF No. 103. Plaintiff's motion at ECF No. 101 was not referred to the undersigned; however, it should be deemed moot as a result of this Order.

the protective order would place on Plaintiff and its ability to prosecute its case should Defendants' in house counsel be denied access. *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984). This determination must be made "on a counsel-by-counsel basis" and turns on whether "in-house counsel are involved in competitive decisionmaking."[2] *Id.* "[S]tatus as in-house counsel cannot alone ... serve as the sole basis for denial of access." *Id.* at 1469. Plaintiff argues that Defendants' in house counsel are officers and employees of Coloplast and hence the "Party," "which means that Defendants "will have access to [Plaintiff's] Highly Confidential Material, while [Plaintiff] won't have access to [Defendants' Highly Confidential Material] simply because [Defendants have] In House Counsel." ECF No. 106 at 5. In other words, Plaintiff wants to be able to review materials marked "Highly Confidential" with its client and believes that all parties should have access to such marked materials. As previously discussed, allowing "the Parties" access to "Highly Confidential" materials renders the two-tiered distinction meaningless. Moreover, allowing Defendants' in house counsel access to materials marked "Highly Confidential" does not give Defendants the "sole and exclusive right" to access those materials, as Plaintiff puts it, because Plaintiff's outside counsel of record is included in the parties who shall have access to materials marked "Highly Confidential." Therefore, the Court adopts Defendants' proposed two-tiered approach, allowing in house counsel access to material marked "Highly Confidential," and not the Parties. However, in order to protect against the risk of "inadvertent or accidental disclosure," the Court adds a clause clarifying that in house counsel is enjoined from sharing the information obtained from "Highly Confidential" documents and documents marked as "Highly Confidential" with other employees or agents of Plaintiff or Defendants. *U.S. Steel Corp*, 730 F.2d at 1468. This modification

---

[2] Plaintiff does not oppose in house counsel's access to "Highly Confidential" material on grounds that Defendants' in house counsel is involved in competitive decision making. Therefore, the Court simply weighs the risk of "inadvertent or accidental disclosure" against the burden the protective order would place on Plaintiff and its ability to prosecute its case should Defendants' in house counsel be denied access. *U.S. Steel Corp*, 730 F.2d at 1468.

puts both sides on equal footing, as none of the managers in charge of making executive decisions on either side will have access to "Highly Confidential" documents or information.

Second, as currently submitted by the parties, the line between the definition of "Confidential Information" and "Highly Confidential Information" appears to be blurry in some respects. First, "trade secrets" is included in both definitions. Second, the difference between "competitively sensitive" marketing information, included in the definition of "Confidential Information," and "strategies for acquisition and retention of clients," included in the definition of "Highly Confidential Information," is not clear. For example, strategies for acquisition and retention of clients could very well entail marketing and competitively sensitive marketing information. Without changes, materials could be marked as "Highly Confidential" and meet the same definition as "Confidential," which may lead to confusion and unnecessary litigation. Therefore, the Court adjusts the definitions of "Confidential Information" and "Highly Confidential Information." Regarding the definition of "Highly Confidential Information," the Court keeps only roman numeral numbers (i) through (iii), eliminating category (iv) in its entirety. Moreover, category (i) "strategies for acquisition and retention of clients" will be changed to "non-marketing strategies for acquisition and retention of clients." Regarding the definition of "Confidential Information," the court clarifies that category (i) "trade secrets, or competitively sensitive technical, marketing, customer, industry, financial, sales or other confidential or proprietary business information" excludes "product pricing," as it is defined as "Highly Confidential."

Accordingly, Plaintiff's and Defendants' motions requesting entry of a confidentiality protective order (ECF Nos. 100, 106) are GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 8th day of May, 2025.

                                                s/Marcos E. López
                                                U.S. Magistrate Judge